**JUAN L. ROCHA**
Rocha Law Firm
AZ Bar No. 025039
PO Box 5965
Mesa, Arizona 85226
Tel: (480) 855-1759
jrocha.law@gmail.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. Case No. 2:24-cr-00344-SPL-004 |
| Plaintiff, | DEFENDANT'S OBJECTION TO PRESENTENCE REPORT ¶ 25 |
| vs. | |
| Enoc Francisco Ibarra, | |
| Defendant. | |

Defendant, Mr. Enoc Ibarra, by and through undersigned counsel objects to paragraph ¶ 25 of the draft pre-sentence report (PSR). Defendant provides the following Memorandum of Points and Authorities in support of his objection.

*Relevant Factual Background*

U.S. Sentencing Guideline (USSG) § 2K1.1(a)(6) assesses an offense level of 14 "if the defendant (A) was a prohibited person at the the defendant committed the instant offnese[.]" Application Note 3 defines "Prohibited Person" to mean "any person described in 18 U.S.C. § 922(g). While the PSR writer does not state which subsection of 922(g) makes Defendant a prohibited person, it is assumed the PSR writer is referring to 18 U.S.C. § 922(g)(3), which bars an individual from possessing a firearm if he is "unlawful user" of a controlled substance; the PSR states that Defendant "told law enforcement he was an illegal user of cocaine." PSR ¶ 25. There is, however, no police report that proves Defendant was under the influence of drugs when he possessed the weapon. Furthermore, the Indictment notes that the offenses were committed in June

of 2023. ECF #1. Defendant reported to Pretrial Services, however, that he last used the controlled substance on March 1, 2024, almost a year after the dates listed in the Indictment. ECF #17. Defendant self-reported, according to the report, the "he commenced consuming cocaine every-other-day at age 23," there is no evidence that he in fact did so. *Id.* There is, for example, no criminal history of him possessing a controlled substance or a similar offense or any extrinsic evidence to corroborate this use around this time. (The PTS also indicates that he self-reported using marijuana and meth, but the PSR writer did not enhance his offense level based on this use.)

*Legal Principles*

The government bears the burden of proof by a preponderance of the evidence to establish the factual predicte for the court's base offense level determination *United States v. Snipe,* 515 F.3d 947, 954 (9th Cir. 2008) (the ourt cannot merely rely on a PSR to find the government has met its burden). Information used at sentencing must have "sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3. Hearsay typically must be corroborated by extrinsic evidence or possess circumstantial gaurantees of trustworthiness. *United States v. Jordan,* 256 F.3d 922, 932-33 (9th Cir. 2001).

*Argument*

1. *Insufficient Evidence to Support Increased Offense Level*

Title 18 U.S.C. § 922(g)(3) bars an individual from possessing a firearm if he is an "unlawful user" of a controlled substance. The Guidelines, however, do not define what is an "unlawful user." It is unclear whether if it is someone who uses illegal drugs regularly (which is itself an ambiguous word) or illegal user in some temporal proximity to the gun possession.

According to the PSR, the Defendant is one such "unlawful user" because he admitted to using cocaine at the time he possessed the firearm. But the government presented no evidence that Defendant was under the influence of drugs at the time of his arrest. In fact, at no point that night did federal agents administer a drug test or ask the Defendant whether he was under the influence of drugs; nor did the officers' reports indicate that he appeared intoxicated. And there is no evidence on when exactly he used a controlled substance, i.e., one week before, one week after, et cetra. It was not until Defendant was interviewed by U.S. Pretrial Services that he admitted to

using cocaine. When asked by Pretrial Services how often he used the drug, he replied, "approximately fourteen days out of a month." His admission to Pretrial Services was sufficient for the PSR writer to assess him a base offense level of 14. Without any corroborating evidence, however, there is a lack of evidence establishing whether Defendant was high at the time of his arrest, whether ATF administered a drug test, or when the drug use occurred in relation to the gun possession. Because the government has failed to carry its burden of proof, the Court should sustain the objection.

        2.     *Illegal Users Have a Right to Bear Arms*

Even as a drug user, Defendant is a United States citizen and therefore a member of our political community; therefore, he has a presumptive right to bear arms. By infringing on that right, § 922(g)(3) contradicts the plain text of the Second Amendment. So, even assuming the government has or can present about Defendant's drug use, § 2K1.1(a)(6) is nonetheless unconstitutional because it violates the Defendant's, right to bear arms under the Second Amendment to the U.S. Constitution.

Section 2K1.1(a)(6) which is tethered to § 922(g)(3) is not consistent with the United States's "historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, -- U.S. --, 142 S. Ct. 2111 (2022). While there have been laws regulating the combination of guns and controlled substances throughout American history, at no point in the 18th or 19th century did the government disarm individuals who used drugs or alcohol at one time from possessing guns at another. A few states banned carrying a weapon while actively under the influence, but those statutes did not emerge until well after the Civil War. Section 922(g)(3)—the first federal law of its kind—was not enacted until 1968, nearly two centuries after the Second Amendment was adopted. but it does not justify disarming a sober citizen based exclusively on his past drug usage. *See United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023) (finding that 922(g)(3) was unconstitutional) (cert granted, judgment vacated 144 S.Ct. 2702 July 2, 2024). Nor do more generalized traditions of disarming dangerous persons support this restriction on nonviolent drug users. As applied to this Defendant, then, § 2K1.2(a)(6) violates the Second Amendment. *Bruen* clarified that firearms regulations are unconstitutional unless they are firmly rooted in our nation's history and tradition of

gun regulation. *See* 142 S. Ct. at 2129–30. If the law fails any part of this test, the court must find that the statute or regulation is unconstitutional.

The *Bruen* test requires district courts to first ask whether the Second Amendment applies by its terms. *Id.* at 2129–30. "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. Next, district courts must ask whether a given gun restriction is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. The government bears the burden of demonstrating a tradition supporting the challenged law. *Id.* at 2130. Only by showing that the law does not tread on the historical scope of the right can the government "justify its regulation." *Id.*

The second step requires both close attention to history and analogical reasoning. *Bruen* did not forswear all legislative innovation. To the contrary, "the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Id.* at 2132. Federal courts are looking for a "tradition"; that is to say, a well-accepted limit on the right to bear arms manifested by a tangible practice of comparable gun regulations. Bruen requires courts to look for a "representative historical analogue, not a historical twin." *Id.* Because there was little regulation of drugs (related to guns or otherwise) until the late-19th century, intoxication via alcohol is the next-closest analogue. Throughout the colonial period and into the 19th century, Americans drank alcohol—so much of it that the States passed a constitutional amendment to preclude the sale of booze. *Id.* at 2133.

As applied to the Defendant, § 2K1.2(a)(6) via § 922(g)(3) is a significantly greater restriction of Defendant's right to bear arms that has no historical analogue. The text of the Constitution makes clear that he is a member of "of the People." Next, there is no historical analogue at the time of this country's founding that precluding men from possessing a firearm if they were users–regular or not–from having access to firearms. And while the statutory term "unlawful user" captures regular users of a controlled substance, its temporal nexus is vague—it does not specify how recently an individual must "use" drugs to qualify for the increased base offense level. Defendant himself admitted to using cocaine, but there is no evidence to know how much he used or when he used it, and, as discussed earlier, the government presented no evidence that Defendant

4

was intoxicated at the time he purchased the guns. Blindly applying § 2K1.2(a)(6) would mean that Congress could ban gun possession by anyone who uses a controlled substance one week from possessing guns. That the PSR writer did not also justify the increase based on Defendant's use of marijuana also shows the arbitrariness of this application.

Under *Bruen*, therefore, § 2K1.2(a)(6) is unconstitutional and the Court should sustain the objection and recalculate Defendant's base offense level.

RESPECTFULLY SUBMITTED:    November 12, 2024.


*s/ Juan L. Rocha,*
**JUAN L. ROCHA, Esq**
Attorney for Defendant


Copy of the foregoing objection to the presentence report was delivered this 12th day of November 2024, to all registrants on CM/ECF

Mailed To:
Defendant