GARY M. RESTAINO
United States Attorney
District of Arizona
SHEILA PHILLIPS
Assistant U.S. Attorney
Michigan State Bar No. P51656
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Sheila.Phillips2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

vs.

Enoc Francisco Ibarra,

Defendant.

No. CR-24-00344-004-SPL-PHX

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR AND SENTENCING MEMORANDUM**

The United States hereby responds to Defendant's Objection to the Presentence Report (PSR) (Doc. 78), indicating that Defendant is a "Prohibited Person" warranting a 14 level base offense under United States Sentencing Guideline § 2K.1.1(a)(6) because of his habitual drug user at the time of the underlying offense. His arguments regarding Second Amendment a violations regarding 18 U.S.C.§ 922(g)(3) fail because those rights are not without limitation, which apply in this case.

## I. Sentencing Guidelines

The Presentence Report (PSR) accurately calculates Defendant's guideline range at 18 to 24 months in prison with a Total Offense Level of 15 and CHC I. PSR at 20. Defendant's base level was increased two levels pursuant to USSG §2K2.1(a)(6) for being a Prohibited Person describe in 18 U.S.C.§ 922(g)(3) (PSR ¶ 25) based on his drug use and a four-level increase for nine firearms under USSG §2K2.1(b)(1)(C) (PSR ¶26). The

United States agrees with calculations set forth in the PSR.

## II. Evidence of Defendant's Drug Use

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) interviewed Defendant on July 19, 2023. Post-Miranda, he indicated the firearms he purchased were for Rojas, his cocaine dealer and at time said that he had last used cocaine the Monday of last week, which would have been July 10, 2023. *See* Exhibit 1, ROI 5, ¶¶ 8, 15, bates 145-147. Using cocaine is against federal law and so is lying on the ATF Form 4473, which removed Defendant from being a law abiding citizen.

Defendant straw purchased nine firearms in June of 2023 for money. PSR ¶ 9. His last purchase was on June 26, 2023 -- which given his statements he was using cocaine. *Id.* When confronted with lying on the ATF From 4473 about indicating he was not an unlawful user of any drug, Defendant said he understood that he was an unlawful possessor. *See* Exhibit 1, ROI 5, ¶ 15, bates 145-147.

Defendant also admitted to using cocaine the day of his arrest on the instant offense, PSR ¶ 60. He stated his substance abuse was long-term and to using cocaine about once a week up until the time of his arrest . *See* PSR¶¶ 57-60. Defendant subsequently completed the inpatient program at Crossroads but then unfortunately relapsed.

## III. Second Amendment Does Not Apply to Habitual Drug Users.

Under Ninth Circuit precedent, Defendant's constitutional challenges to 18 U.S.C.§ 922(g)(3), which prohibits habitual drug users from possessing firearms, are without merit. He predicates his argument on *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), 142 S. Ct. 2111 (2022), which does not apply her because it does not address prosecution under 18 U.S.C.§ 922(g)(3) or the subsequent application of USSG §2K2.1(a)(6) to habitual drug users predicated on the statute.

Defendant's argument is further weakened considering *United States v. Rahimi,* 144 S. Ct. 1889 (2024). In *Rahimi,* the Supreme Court held post-*Bruen* that firearm restrictions based on a domestic violence restraining order are constitutional. Looking at case specific

facts, the defendant violated the law that was meant to protect society. (*Id.* at 1898). *Rahimi*, specifically upheld 922(g)(8) under the analytical framework established in *Bruen.* Applying that framework to the facts in the case at bar, the United States asserts the same constitutional result proves true.

Under the *Bruen* standard, *Rahimi* observed that "some courts have misunderstood the methodology of our recent Second Amendment cases," which "were not meant to suggest a law trapped in amber." *Id.* at 1897. Instead, the Supreme Court emphasized that a modern regulation "must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.' " *Id.* at 1898. Here the Defendant asks this Court to apply the same misunderstood methodology. Instead, the Supreme Court indicated the challenged law must only be "relevantly similar to the laws [the United States] tradition is understood to permit" to be constitutional. *Id* at 16. The Court said, "[]what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901. Applying common sense, this is the case here.

Nevertheless*,* *Rahimi* is a narrow decision. The Court did not delineate the "full scope of the Second Amendment" but "conclude[d] only this: An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Rahimi*, 144 S. Ct. at 1903 (internal quotation marks omitted). The United States believes the same principle applies here to Defendant.

In support of the government's position, *Bruen* also identified and affirmed a few broad "principles" that limit the Second Amendment's scope, most importantly that the Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes," *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008), and that legislatures may prohibit the carry of firearms in "sensitive places," including "new" places where firearms were not prohibited at the founding. *Bruen*, 597 U.S. at 30 (emphasis omitted). Likewise, the United States asserts these limitations apply when a habitually, addicted drug user buys firearms because the addict's judgment is often

impaired and firearms in the wrong hands are dangerous.

In *Heller*, the Supreme Court affirmed the above principle of limitations although indicating "on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). The Court made clear, however, that "the right secured by the Second Amendment is not unlimited." *Id.* at 626; *cf. id.* at 635. Instead, the Court identified the right to keep and bear arms as belonging to "law-abiding, responsible citizens." *Id.* at 635. And consistent with that understanding, the Court specifically stated that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," which the Court deemed "presumptively lawful." *Id.* At 626 & n.26. The Ninth Circuit in *United States* v. *Dugan,* 657 F.3d 998 (9th Cir. 2011., extended lawful prohibitions to habitual drug users that because these users are not reasonable, law-abiding citizens, laws restricting their rights to firearms as constitutional.

Defendant's claim that § 922(g)(3) facially violates the Second Amendment, not only fails to recognize the limitations set by both *Bruen* and *Rahimi,* but his argument is also foreclosed by Dugan[1], which upheld the constitutionality of the statute at bar and is currently precedent in the Ninth Circuit. Dugan remains binding as it does not directly conflict with *Bruen.* The Supreme Court's primary holding that a state cannot "prevent law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms" in public, is not clearly irreconcilable with *Dugan*. 142 S.Ct. at 2156.

In *Dugan* the Ninth Circuit concluded that habitual drug users were prohibited for relevantly similar reasons as felons and the mentally ill: "we see the same amount of danger in allowing habitual drug users to traffic in firearms as we see in allowing felons and mentally ill people to do so." *Dugan*, 657 F.3d at 999. The Court also determined that the burden imposed by the regulation was "far less onerous" than that constitutionally imposed

---

[1] The Ninth Circuit granted rehearing en banc in *United States v. Duarte* which challenged the constitutionality of the Federal Felon in possess statute under Section 922(g)(1) as it applies to some nonviolent offenders in the wake of *Rahimi*, with en banc argument scheduled for December 2024.

on other classes: "unlike people who have been convicted of a felony or committed to a mental institution and so face a lifetime ban, an unlawful drug user may regain his right to possess a firearm simply by ending his drug abuse." *Id.* On that basis, the Court found the statute constitutional and subsequent Supreme Court or Ninth Circuit decisions never undermined the logic or holding in *Dugan*.

Instead, the Supreme Court in *Rahimi*, citing *Heller*, expressly made clear that the Court "do[es] not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse," (quoting *Heller*, 554 U.S. at 626, 627 n.26) (reiterating "that "prohibitions[] like those on the possession of firearms by 'felons and the mentally ill[]' are presumptively lawful.").

After *Bruen*, thus far neither the Supreme Court nor the Ninth Circuit has revisited the constitutionality of 18 U.S.C.§ 922(g)(3). Therefore, the United States maintains *Bruen* does not unearth the Ninth Circuit's ruling in *Dugan* – especially as applied to the facts at bar where defendant, who was addicted to drugs was buying firearms for his drug dealer.

Therefore, the Court should deny Defendant's objection and adopt the sentencing guideline calculations in the PSR.

## IV. United States Sentencing Recommendation

The United States is requesting a sentence of no more than twelve months and a one day, which is within the terms of the Plea Agreement even without the contested two-level increase in the base offense level, which would result in a final guideline arrange of 12 to 18 months. *See* PSR at 26.

Here, Defendant's criminal behavior was not isolated. He illegally purchased nine firearms for his drug dealer – likely knowing they could be used in crimes or be transported to Mexico. Circumstantially, it appears he made the straw purchases to fund his drug habit as he admitted he was using cocaine about once a week during the time of the purchases.

*See* PSR¶¶ 57-60. Defendant lied five times on different ATF Form 4473s on five different days – each time make the choice to violate firearms laws. He also lied in multiple ways: 1) regarding being the actual purchaser of the firearms; 2) by using an old address and 3) about not being a drug user.

Defendant's long-term drug addiction increases his danger to the community. Despite being on pretrial release, and completing inpatient counselling at Crossroads, he relapsed which resulted in his pretrial detention. PSR ¶¶ 57, 64-65. Based on Defendant's noncompliance on release, a significant sentence is warranted to promote deterrence and sobriety.

To Defendant's credit, he seems willing to address his drug addiction, was honest with the Probation Officer and completed inpatient treatment. The current case is also his first felony conviction. As such, the United States believes a sentence of no more than 12 months and 1 day is sufficient but not greater necessary to promote 18 U.S.C. §3553 factors. Therefore, the United States respectfully request the Court sentence Defendant to 12 months and 1 day followed by 3 years of supervised release.

Respectfully submitted this 19th day of November, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Sheila Phillips*
SHEILA PHILLIPS
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Juan Rocha, *Counsel for Defendant*

*s/ Sheila Phillips*
U.S. Attorney's Office